

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bascom Giles, Commissioner
General Land Office
Austin, Texas

Dear Mr. Giles:

Opinion No. O-3718
Re: Are surveyors who applied for
licenses prior to the effec-
tive date of S. B. 351, 47th
Legislature, and prior to the
meeting of the Board of Exam-
iners of Land Surveyors re-
quired to pass the written
examination provided for in
S. B. 351.

We have received your request that we construe
Article 5282, Revised Civil Statutes, 1925, as amended by
S. B. 351 of the 47th Legislature, with respect to its effect
upon the rights of surveyors who had filed their applications
for license prior to the effective date of S. B. 351 and prior
to the meeting, on June 16, 1941, of the Board of Examiners
of Land Surveyors.

You desire to know:

"* * * Whether or not those applications
filed prior to June 14, 1941, and before the
meeting of the Board, should come under the pro-
visions of Article 5282, or should the applicant
be required to take the written examination as
provided for in Senate Bill 351, effective as
of June 14, 1941."

Article 5282 prior to its amendment by Senate Bill
351 provided as follows:

"Any applicant who is a reputable surveyor
of fifteen years actual experience in the field
as such surveyor shall receive a license without

examination when he shall have applied therefor, accompanying such application to the Board with the affidavits of three credible persons to the effect that such applicant is a reputable land surveyor of fifteen years actual experience in the field, and upon the payment of a fee of two dollars to said Board."

Article 5282, as amended by S. B. 351, reads:

"No person shall be authorized to perform the duties of a licensed State land surveyor without first standing and passing the examination herein provided for, and obtaining a license as provided by this Act."

Senate Bill 351 is a comprehensive amendment to Articles 5266-5288, inclusive. Provision is made in the Act that every surveyor, before performing the duties of a licensed state land surveyor, must pass a written examination. Senate Bill 351 does not expressly exempt those who had filed applications for license prior to the effective date of S. B. 351.

Senate Bill 351 is sufficiently broad in its language to include applicants whose applications were filed prior to its effective date. Since the Legislature has made no exemption of such applicants from the provisions of the Act, we are unable to do so by reading such an exemption into the Act by implication.

We recognize the fact that the applicants in question, prior to the effective date of S. B. 351, had taken every step required by old Article 5282 as prerequisites to obtaining licenses. If the privilege granted by Article 5282 prior to its amendment of securing the rights and performing the acts and duties of a licensed land surveyor constitute a vested property right within the meaning of the protective clause of the State and Federal Constitution, it could plausibly be contended that the Legislature is powerless to enact legislation operating to revoke that privilege. We think, however, that the privilege granted by Article 5282 is not "property" within the meaning of the State and Federal Constitution.

Honorable Bascom Giles, Commissioner, Page 3

A licensed state land surveyor has been held by the courts to be a public official. Stanolind Oil & Gas Company vs. State, 114 S. W. (2d) 704. The language of the Court of Civil Appeals in so defining a licensed state land surveyor was quoted with approval by the Supreme Court in Stanolind Oil & Gas Company v. State, 133 S. W. (2d) 767, 777.

The decisions in Texas are in accord in holding that a public office is not a "property right" within the meaning of the due process clause of the Constitution. State v. Grumbaugh, 63 S. W. 925; Garver v. Wheeler County, 200 S. W. 537; City of Palestine v. West, 37 S. W. 783.

In the first cited case the court in deciding that a county commissioners' court could lawfully abolish the office of County Superintendent of Public Instruction after appointing relator thereto said:

"A public office is not 'property,' within the meaning of the constitutional provision that 'no person shall be deprived of life, liberty or property without due process of law.' It is a mere public agency, revocable according to the will and appointment of the people, as exercised in the constitution and the laws enacted in conformity therewith. Moore v. Strickling (W. Va.) 33 S. E. 274, 50 L. R. A. 279. In the case cited the court in its opinion makes, with approval, from Donahue v. Will Co., 100 Ill. 94, the following quotation: 'It is impossible to conceive how, under our form of government, a person can own or have a title to a governmental office. Offices are created for the administration of public affairs. When a person is inducted into an office he thereby becomes empowered to exercise its powers and perform its duties, not for his, but for the public, benefit. It would be a misnomer and a perversion of terms to say that an incumbent owned an office or had any title to it.' * * * "

In the case last cited above the court said:

"The body (city council) having power to create a public appointive office, has power to discontinue it." (Parenthesis ours)

Honorable Bascom Giles, Commissioner, Page 4

It follows from the decisions that the Legislature having created the office or position of licensed state land surveyor has the power to discontinue or abolish it. If the Legislature can constitutionally abolish the position, certainly no constitutional prohibition exists against a provision requiring that a written examination be passed as a condition to continuing the exercise of the privileges of the office. Senate Bill 351 does not operate to make unlawful the practice of surveying by those who have not obtained a license. It, and the statute it amends, simply deny to those not having a license the particular privileges granted by the Act to licensed land surveyors. These privileges were granted and conferred by the Legislature and their exercise by those who have not met legislative requirements may be prohibited by the Legislature.

Abundant authority supporting the power of the Legislature to require additional evidence of competency of a member of a profession even after a license has been issued to him is found in the decisions. In 17 R.C.L. p. 555 is found this correct statement of the general rule:

"The power of the state to cancel a license necessarily includes the power to determine for what causes and in what manner the revocation shall be made; and since the right of exclusion belongs to the state, the means by which it accomplishes that result are not the subject of judicial inquiry."

In Marrs vs. Matthews, 270 S. W. 586, the court said:

"A certificate to teach in the public schools is merely a license granted by the state, and is revocable by the state at its pleasure. Baldacchi v. Goodlett (Tex. Civ. App.) 145 S. W. 325; Stone v. Fritts, 169 Ind. 361, 82 N. E. 792, 15 L.R.A. (N.S.) 1149, 14 Ann. Cas. 295; 24 R.C.L. 613. It is not a contract protected by the due process provisions of either the state or the federal Constitution. Such a license is, presumably, accepted and held subject to the then existing and any future law providing for its forfeiture. The Legislature

Honorable Bascom Giles, Commissioner, Page 5

had authority to make the law as it is, and if the applicant did not wish to submit to the conditions affixed for its forfeiture he should not have accepted the certificate. One who accepts a license impliedly agrees to submit to the tribunals which the state has created for determining his fitness to continue in the enjoyment of the privilege granted. * * * " (Emphasis added)

In Morse v. State Board of Medical Examiners, 122 S. W. 446, writ of error refused, it was held that a physician previously licensed under an Act of 1895 was properly refused another license to practice required by an Act of 1907. The constitutionality of the Act of 1907 was upheld by the United States Supreme Court in Collins v. Texas, 223 U. S. 287, 56 L. Ed. 440.

Butcher v. Maybury, 8 Fed. (2) 155, involved the constitutionality of a statute which changed and increased the qualifications required of licensed practitioners of "drugless healing." The plaintiffs, having already been issued licenses under a prior statute, attacked the amended statute as violative of the due process and ex post facto provisions of the Federal Constitution. The court in upholding the statute said:

"No person can acquire a vested right to continue, when once licensed, in a business, trade, or occupation which is subject to legislative control and regulation under the police power. The rights and liberty of the citizen are all held in subordination to that government prerogative, and to such reasonable regulations and restrictions as the legislature may from time to time prescribe . . . Regulations so prescribed and conformed to by the citizens may be subsequently changed or modified by the legislature, whenever public interest requires it, without subjecting its action to the charge of interfering with contract or vested rights. This is elementary." (Emphasis added)

In Gray v. Connecticut, 159 U. S. 74, 40 L. Ed. 80, the United States Supreme Court held that the state, after granting a license to a pharmacist which authorized him to

Honorable Bascom Giles, Commissioner, Page 6

sell medicines containing intoxicating liquor, could there-
after require him to procure an additional druggist's license
as a provision to continuing the sale of such medicine. The
court said:

> "The responsibility of the legal authority,
> municipal or state, cannot be stipulated or
> bartered away. Whatever provisions were pre-
> scribed by the law previous to 1890, in the use
> of spiritous liquors in the medicinal prepara-
> tions of pharmacists, they did not prevent the
> subsequent exaction of further conditions which
> the lawful authority might deem necessary or
> useful."

In Dent v. State of West Virginia, 129 U. S. 114,
32 L. Ed. 623, it was held that the Legislature may, after the
granting of a license, attach additional requirements as a
condition to the retention of such license.

In Reetz v. People of the State of Michigan, 188 U. S.
505, 47 L. Ed. 563, the court said:

> "It is further insisted (by the physician
> previously licensed) that having once engaged
> in the practice, and having been licensed so to
> do, he has the right to continue in such practice,
> and that this statute was in the nature of an ex
> post facto law. The case of Hawker v. New York,
> 170 U. S. 189, 42 L. Ed. 1002, 18 Sup. Ct. Rep.
> 573, is decisive upon this question. The statute
> does not attempt to punish him for any past of-
> fense, and in the most extreme view can only be
> considered as requiring continuing evidence of his
> qualifications as a physician or surgeon. * * *"
> (Parenthesis ours)

Other decisions which uphold the constitutionality
of statutes attaching additional requirements as conditions to
the retention of licenses previously granted are: State v.
State Medical Examining Board, 32 Minn.324, 20 N. W. 238; Haw-
ker v. New York, 170 U. S. 189, 42 L. Ed. 1002; State v. Call
121 N.C. 643, 28 S. E. 517; Commonwealth v. Densten, 30 Pa.
Super. Ct. 631; State v. Webster, (Ind) 50 N. E. 750.

Honorable Bascom Giles, Commissioner, Page 7

The above cited decisions and others not cited in this opinion compel the conclusion that the Legislature constitutionally can require an examination of applicants who applied for license prior to the effective date of Senate Bill 351. In view of such decisions we are unable to say that the requirement of an examination is an unreasonable or arbitrary means of determining the continuing competency of an applicant for license. If the requirement is not unreasonable, the statute providing for the requirement is clearly not unconstitutional. To hold otherwise than as we do in this opinion would be to permit the bartering away by former legislatures of the unquestioned right of the 47th Legislature to provide reasonable regulations governing the exercise of the privileges granted by the Legislature to licensed land surveyors.

There being no exemption by the Legislature of the applicants in question from the requirement that an examination be passed, you are accordingly advised that such applicants are required to pass the examination provided for in Senate Bill 351 before receiving licenses.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Robert E. Kepke
Robert E. Kepke
Assistant

REK:aj

APPROVED AUG 2, 1941

Gerald C. Mann
ATTORNEY GENERAL OF TEXAS


THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED